IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Case Action No.   11-cv-03396-PAB-MEH

PAUL ALLEN,
SCOTT ARENDS,
WAYNE BETHURUM,
JEREMY LOYD, and
GARY SKAGGS
on behalf of themselves and all others similarly situated,

Plaintiffs,

v.

TOM CLEMENTS, Executive Director, Colorado Department of Corrections,
BURL MCCULLAR, Director of the Sex Offender Treatment and Management
          Program, Colorado Department of Corrections, and
JANE/JOHN DOE(S),  Known to Defendants but Presently Unknown to Plaintiffs

Defendants.
_____

**PLAINTIFFS' RESPONSE TO MOTION TO DISMISS AND BRIEF IN OPPOSITION**
_____

Come now the plaintiffs, by and through their counsel, and hereby submit their response in opposition to defendants' FRCP 12(b)(6) Motion to Dismiss, stating as follows:

**COUNTERSTATEMENT**

Plaintiffs dispute the defendants' allegations, in a "preliminary statement" that this action arises from, or is somehow concerned with, driven by, or related to, an alleged general social, political, and academic debate concerning sex offenders. *Defendants' Motion to Dismiss (hereinafter, M.) p. 2.* While the plaintiffs are unable to determine the basis for this allegation, or its possible relevance to this litigation, which is an action for protection and vindication of the

plaintiffs' constitutional rights, it is, nevertheless, unsupported and unsupportable and should be disregarded or stricken.

Similarly, the plaintiffs respectfully disagree that the action arises from their "inability to progress to the next level of sex offender treatment" or that they "incorrectly believe that they cannot become parole eligible until they successfully complete offense-specific sex offender treatment" *M at 3*.

### DEFENDANTS' INCLUSION OF EXTRANEOUS MATERIALS

Although the Court may, pursuant to FRE 201, take judicial notice of "matters of public record" without converting a motion to dismiss into a motion for summary judgment, *Grynberg v. Koch Gateway Pipeline Co.,* 390 F.3d 1276, *1279* n .1 (10th Cir.2004), the Court may not take judicial notice of a fact that is "subject to reasonable dispute." Fed.R.Evid. 201(b).  The defendants have attached two court decisions to their motion which they aver indicate that plaintiffs Arends and Skaggs were afforded due process and treatment, but those "facts" are subject to reasonable dispute.  Both individuals appear to have litigated their issues *pro se*, without the assistance of counsel, and the defendants have not provided the court files, or even the complaints.  Thus, it is not possible to determine whether either had a full and fair opportunity to litigate his claim.[1] The court decisions attached to defendants' motion indicate that Mr. Arends' *pro se* claims were so poorly presented that the court was unable to determine precisely what he was attempting to argue, although it was clear that he unavailingly sought the

---

[1] Preclusion applies only to those issues or claims which a party has previously had a full and fair opportunity to litigate. *Montana v. United States,* 440 U.S. 147, 153-54 (1979)

2

court's protection against retaliation, and that Mr. Skaggs' claim was dismissed without consideration of the merits, thus is not precluded. The defendants' suggestion that the opinion attached as Defendants' Exhibit B (15-2) is the result of a full and fair adjudication, or dispositive of Mr. Arends' claim is subject to reasonable dispute, and not to preclusion. *Allen v. McCurry,* 449 U.S. 90,101 (1980)  Further, it does not appear from the court's decision that Mr. Arends raised the issues of pretextual termination or refusal of re-entry in the Rule 106 proceeding, thus his claim is not subject to preclusion. *Valley View Angus Ranch v. Duke Energy*, 497 F.3d 1096, 1105-06 (10th Cir. 2007)*(claims not 'actually litigated' and 'necessarily determined' are not subject to preclusion).* Because preclusion is an affirmative defense which the defendants must plead and prove, *Taylor v. Sturgell*, 553 U.S. 880, 907 (2008), it is not properly before the Court on a 12(b)(6) motion.

## STANDARD OF REVIEW

A motion to dismiss under Fed. R. Civ. P. 12(b)(6) tests the legal sufficiency of the plaintiffs' complaint. When considering a motion to dismiss, the court first accepts as true all factual allegations in the complaint. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). Plaintiffs must assert factual grounds for their claims, but need only state a "plausible" claim for relief under some viable legal theory. *Id.* at 1950. "Factual allegations must be enough to raise a right to relief above the speculative level on the assumption that all of the complaint's allegations are true." *Bell Atlantic Corp. v. Twombly*, 127 S.Ct. 1955, 1959 (2007). The Court does "not require heightened fact pleading of specifics, but only enough facts to state a claim for relief that is plausible on its face." *Iqbal, supra* at 678.

### DEFENDANTS' CONTENTIONS

**I.     DISPUTED: PLAINTIFFS SEEK NO RETROACTIVE DECLARATORY RELIEF**

The plaintiffs have not pled an entitlement to, nor do they seek, declaratory or injunctive relief for the defendants' past violations of their constitutional rights.  Rather, plaintiffs provide a brief history of defendants' conduct and policies understanding that the Court cannot evaluate the plaintiffs' claim in an historical vacuum, or absent an understanding of the evolution of the defendants' disregard for the General Assembly's expressed intentions concerning the Lifetime Supervision Act.  Because many of the policies, procedures, and conduct complained of are of longstanding duration continuing to the present day, and because the defendants have indicated no intention of ameliorating the policies or conduct, the historical foundation is necessary to any coherent presentation of the plaintiffs' claims.  Further, exposition of the time scale over which the defendants have been on notice of the harm resulting from their policies, decisions, and conduct, the opportunity to exercise reflective judgment, and the abject failure to do so, is directly relevant to the issues of willful indifference, arbitrary and malicious exercise of power, and conscious disregard of the risk of constitutional harm.

**II.    DISPUTED: THE ISSUE IS NOT PROCEDURALLY POSITIONED FOR THE TRIAL COURT'S "RIGOROUS ANALYSIS" OF THE RULE 23 FACTORS, AND THE DEFENDANTS' MOTION TO DISMISS CLASS ALLEGATIONS IS PREMATURE, THE NAMED PLAINTIFFS ARE PLAUSIBLY APPROPRIATE CLASS MEMBERS AND CONSTITUTE A PLAUSIBLE CLASS**

While *Wal-Mart Stores, Inc. v. Dukes*, 131 S.Ct. 2541, 2551-52 (2011), instructs trial courts to engage in a "rigorous analysis" of the four F.R.C.P. 23 factors prior to certification of a class,

the decision does not apply to this stage of litigation. By its plain language, *Wal-Mart* mandates that the "rigorous analysis" under Rule 23 is to be applied once the party seeks class **certification** under Rule: "A party seeking class certification must affirmatively demonstrate his compliance with the Rule—that is, he must be prepared to prove that there are *in fact* sufficiently numerous parties, common questions of law or fact, etc." *Id.* Although the defendants' 12(b)(6) motion with regard to the class allegations is premature, plaintiffs submit that the certification of the class is plausible, and that the named plaintiffs are plausible representatives of the class. To prevail on a Rule 12(b)(6) motion to dismiss, defendants must demonstrate that the class claim is legally barred or factually implausible as a matter of law.

### A. NUMEROSITY

Although the defendants do not appear to challenge numerosity, the plaintiffs anticipate, based on the information available at this time, which indicates some 1,700 inmates presently incarcerated under SOLSA indeterminate sentences and the current treatment statistics of twenty-four percent, combined Phase I and Phase II, the systemic theory of "legalosity" and its concomitant consequences, the unavailability of any remedy for termination, or any means of seeking re-entry to treatment, that the plaintiff class properly consists of approximately one thousand individuals.

### B. COMMONALITY

Defendants' motion relies on irrelevant minutiae in an attempt to defeat "commonality" under FRCP 23(a)(2). Defendants contend that the named plaintiffs are incarcerated at different facilities. *M. p.6* While that is a correct statement of fact, at least at the time of filing, it is

irrelevant to any claim at issue, as are the allegedly differing pretexts used to deny the named plaintiffs treatment. *M. p.6*   Whether a class representative has been pretextually terminated and denied re-entry or simply had his importunings for information, process, or treatment, ignored for years on end, the common claim predominates: the defendants have denied each plaintiff and class member, and continue to deny each, treatment.

"What matters to class certification ... is not the raising of common 'questions'—even in droves—but, rather the capacity of a classwide proceeding to generate common *answers* apt to drive the resolution of the litigation." *Wal-Mart, supra,* at 2551.   The relief sought must affect the entire (b)(2) class at once. *Id.* at 2558   *Wal-Mart*'*s* admonition that plaintiffs seeking a class certification may demonstrate commonality by significant proof that the defendant operated under a general policy, which manifested itself in the same general fashion, *Id.* at 2553, appears to leave intact the Tenth Circuit's holding, "that the claims of individual class members may differ factually" does not preclude certification where the claim alleges "the application of a common policy." *J.B. ex rel. Hart v. Valdez,* 186 F.3d 1280, 1288 (10th Cir.1999)*.*

Should plaintiffs succeed both in their attempt at class certification and in obtaining the relief they seek, the "answer" they receive resolves the litigation and provides identical relief to each class member: treatment, some rational, quantified, means of qualifying for treatment, and some measure of protection against arbitrary, capricious, and pretextual termination to free up space and create unsound and misleading statistics.   The relief sought is clear and narrowly tailored, anticipated to be substantially similar to that set out in *Appendix 3.*

### C. TYPICALITY

Rule 23(a)(3) requires only that a class representative's claims be sufficiently typical of the class claims that the class will be adequately represented by the named plaintiffs' litigation. *Adamson v. Bowen*, 855 F.2d 668, 676 (10th Cir. 1988). Neither will differing fact situations defeat typicality, so long as the claims of the representative and the class are based on the same legal or remedial theory. *Id.* (citations omitted). *Adamson* plaintiffs sought "declaratory relief and an injunction directing the Secretary to follow the proper law of this circuit" *Id.* at 675, represented by a "legal services agency challenging a broad, continuing policy" *Id.* Thus, final resolution of the claim of a class representative would in no way vitiate the viability of the class claim, as there would likely be "other legal services clients with a continuing live interest in the case who can represent the class…" *Id.* A similar situation obtains here, where counsel act *pro bono*, and there is a continuous influx of appropriate class members with a "live interest in the case", resting on common remedial theories and claims concerning the defendants' failure to provide the mandated treatment under SOLSA and interference with plaintiffs' attempts to seek vindication of their rights. The defendants make no showing that the named plaintiffs lack typicality sufficient to permit dismissal of the class allegations as implausible at this stage.

### D. ADEQUACY OF REPRESENTATION

Rule 23(a)(4) requires that the representative parties "fairly and adequately protect the interests of the class." The Tenth Circuit holds that adequacy of representation depends on resolution of two questions:

> (1) do the named plaintiffs and their counsel have any conflicts of interest with other class members and (2) will the named plaintiffs and their counsel prosecute the action vigorously on behalf of the class?'

*Rutter & Wilbanks Corp. v. Shell Oil Co.,* 314 F.3d 1180, 1187-88 (10th Cir.2002). Defendants allege no conflict between counsel, named plaintiffs, and/or members of the class.

### E. OTHER CLASS CONSIDERATIONS

The Tenth Circuit has held that Rule 23(b)(2) "imposes two independent, but related requirements" on those seeking class certification. *DG ex rel. Stricklin v. Devaughn,* 594 F.3d 1188, 1199 (10th Cir.2010). "First, plaintiffs must demonstrate defendants' actions or inactions are 'based on grounds generally applicable to all class members.' Second, plaintiffs must also establish the injunctive relief they have requested is 'appropriate for the class as a whole.'" *Id.*

At the class certification stage (rather than the 12(b)(6) stage), the plaintiffs must show that the class members' injuries are "sufficiently similar" that they can be remedied in a single injunction without differentiating between class members. *Id.* At this preliminary stage, the plaintiffs appear to have suffered the same constitutional injury and are each subject to the challenged policy. The fact that some claims may differ factually is no bar to certification, so long as the relief requested would operate on a class-wide basis, irrespective of a class member's particular factual circumstances.

### F. EXHAUSTION OF REMEDIES UNDER THE PRISON LITIGATION REFORM ACT IS AN AFFIRMATIVE DEFENSE AND INAPPLICABLE TO A 12(B)(6) MOTION OR PROCEEDING

Failure to exhaust administrative remedies under § 1997(e) is an affirmative defense, and not a basis for dismissal under 12(b)(6). *Jones v. Bock,* 549 U.S. 199, 214-17 (2007)*(striking*

8

*requirement in the Tenth and other Circuits that exhaustion must be affirmatively pled).* Because failure to exhaust is an affirmative defense, the defendants bear the burden of demonstration that the plaintiffs have not exhausted administrative remedies, and may be required to demonstrate that there is, in fact, an administrative remedy or procedure for termination from treatment. *Booth v. Churner*, 532 U.S. 731, 736 (2006). The issue is not properly before the Court on a Motion to Dismiss under 12(b)(6).

## III.    DISPUTED: THE EIGHTH AMENDMENT CLAIM

The Eighth Amendment is intended to protect and safeguard a prison inmate from an environment where degeneration is probable and self-improvement unlikely because of the conditions existing which inflict needless suffering, whether physical or mental. *Battle v. Anderson,* 564 F.2d 388, 393 (10th Cir.1977). Plaintiffs allege that the defendants have deliberately, or with deliberate indifference, systematically excluded them from statutorily-mandated treatment, terminated them on pretext and failed, deliberately or with deliberate indifference, to provide any process, standards, or method for effecting a re-entry into treatment. Plaintiffs state a direct injury. *DKT#1,¶¶ 9-13,29-34,36,48-49.* The defendants have admitted this with respect to re-entry. *Transcript of Spitz v. DOC, 6/11/2011; DXT#1,Exhibit 1.*

Unlike offenders who are sentenced to life without parole, the plaintiffs are sentenced with the understanding that the statute under which the indeterminate sentence is imposed mandates treatment and, upon successful completion, eligibility for parole. They understand that they will face lifetime supervision, but are told by the sentencing judges that they will become parole-eligible after completing treatment. The defendants have vitiated this understanding,

subjecting the plaintiffs to wanton and unnecessary cruelty, degradation, and physical illness and injury.[2] The defendants' continuing policies and practices permitting arbitrary, capricious, and pretextual termination of plaintiffs from treatment and refusal to promulgate any sort of roadmap to, or rational, objective, process for obtaining, re-entry is unnecessarily and wantonly cruel and has caused the plaintiffs, and continues to cause them, suffering unrelated to any legitimate penological purpose. *DKT#1,¶¶ 29-36.*

The infliction of unnecessary suffering is inconsistent with contemporary standards of decency. *Battle v. Anderson, supra,* 564 F.2d at 402. The wanton infliction of pain violates the Eighth Amendment, *Hudson v. McMillian*, 503 U.S. 1,16 (1992), and is "repugnant to the conscience of mankind". *Louisiana ex rel. Francis v. Resweber*, 329 U.S. 459, 471 (1947) *(Frankfurter, J., concurring)* A prisoner's right to medical treatment, for instance, arises from the Eighth Amendment's prohibition against the "infliction of unnecessary suffering", which is "inconsistent with contemporary standards of decency". *Estelle v. Gamble,* 429 U.S. 97, 103,106 (1976). International standards of decency accord with this reasoning and expressly prohibit cruelty and degradation in a penological setting. *United Nations Convention Against*

---

[2] Settled scientific research establishes that clinical depression and anxiety of significant duration results in physical brain damage, including a reduction in hippocampal volume and permanent decreases in brain derived neurotrophic factor. *See, e.g.,. Sheline YI, Gado MH, Kraemer HC Untreated depression and hippocampal volume loss. Am J Psychiatry 2003;160:1516-8.;  Hasler G, Fromm S, Alvarez RP et al. Cerebral blood flow in immediate and sustained anxiety. J Neurosci 2007;27:6313-9; Frodl TS, Koutsouleris N, Bottlender R et al. Depression-related variation in brain morphology over 3 years: effects of stress? Arch Gen Psychiatry 2008;65:1156-65;  Martinowich K, Manji H, Lu B. New insights into BDNF function in depression and anxiety. Nature Neurosci 2007;10:1089-93.*

*Torture (Appendix 1).* When even regular outdoor exercise is understood to be so important to the psychological and physical well being of inmates such that the denial of fresh air and exercise may amount to cruel and unusual punishment, *Bailey v. Shillinger,* 828 F.2d 651, 653 (10th Cir. 1987), there can be little argument that the arbitrary denial of the means of earning release from confinement, to an inmate sentenced with an explicit assurance that he could earn such release, constitutes cruel and unusual punishment.

### IV. FOURTEENTH AMENDMENT DUE PROCESS CLAIM

#### A. **DISPUTED**: SUBSTANTIVE DUE PROCESS

In *Collins v. City of Harker Heights Tex.*, 503 U.S. 115 (1992) the Supreme Court held that the standard for judging a substantive due process claim is whether the challenged government action would " 'shock the conscience' of federal judges." *Id.* at 126. The Supreme Court provided further insight into the "conscience-shocking" standard, in *County of Sacramento v. Lewis*, 523 U.S. 833 (1998), considering an alleged due process violation arising from police conduct in a high speed chase resulting in death. The Court rejected "the lowest common denominator of customary tort liability as any mark of sufficiently shocking conduct", finding that the Constitution does not guarantee due care on the part of state officials; liability for negligently inflicted harm is categorically beneath the threshold of constitutional due process." *Id.* at 835-36, but where the conduct is more than negligent but less than intentional, that conduct may be egregious enough to state a substantive due process claim. *Id.* at 848 n. 8, 849. Within this middle range, the level of culpability is determined by examining the circumstances that

11

surround the conduct at issue and the governmental interest at stake. A less-demanding standard, "deliberate indifference", is proper when actual deliberation is practical. *Id.* at 851.

A claim for violation of an individual's right to substantive due process may rest on an exposition of facts showing the individual was deprived of a "property or liberty interest warranting due process protection," and that the deprivation was "arbitrary and capricious." *Crider v. County Commissioners, County of Boulder,* 246 F.3d 1285, 1289 (10th Cir. 2001).

These defendants have had ample time to deliberate, and to reflect on their decisions, yet made a conscious, reflective, decision to provide no review whatever of decisions to terminate inmates from treatment. Despite their knowledge that termination constitutes a grievous deprivation of an inmate's liberty interest and removes all hope of release, the defendants deliberately ensured that their decisions, and the bases for those decision, would be insulated from review within the Department of Corrections. The defendants have ignored plaintiffs' pleas for a roadmap to re-entry and have denied them any answer or guidelines, implementing no meaningful route to re-entry into treatment. *DKT#1 ¶¶ 29-36.* The considered, reflective, conduct states a claim for violations of the plaintiffs' rights to Due Process of Law.

### B.  PROCEDURAL DUE PROCESS

To state a procedural due process claim, a plaintiff must establish: (1) a liberty or property interest protected by the Due Process Clause, and (2) that the procedures utilized were inadequate under the circumstances. *Veile v. Martinson*, 258 F.3d 1180, 1184-85 (10th Cir. 2001). The interests protected by the Due Process Clause may arise from state law. *Sandin v. Conner*, 515 U.S. 472, 483-84 (1995).

A state is free to create liberty interests, and may do so by means of mandatory statutory language. *Meachum v. Fano,* 427 U.S. 215, 226 (1976). Where the state provides a statutory entitlement, it creates a liberty interest, implicating due process. *Goss v. Lopez,* 419 U.S. 565, 573 (1975)[3]. Colorado has done so, by mandating offense-specific treatment and reposing no discretion in prison officials over whether it shall be provided. *C.R.S. §§ 16-11.7-105, 18-1.3-1006 (Appendix 2)* The sentencing scheme provides for the possibility of parole upon completion of the minimum term (less earned time), only on condition that the offender has "successfully progressed in treatment". The denial of parole must be reviewed every three years thereafter, and remains conditioned on the finding that s/he has "successfully progressed in treatment"

By creating a mandatory treatment provision, which confers no discretion on the Department of Corrections concerning whether to withhold or provide that treatment, and making successful progress in that treatment the sole means by which an offender sentenced under the SOLSA may secure release to parole, the Colorado General Assembly created a liberty interest in the treatment. The defendants have deprived the plaintiffs of that liberty interest without process or protections of any kind. *DKT#1,¶¶9-13,29-36.*

The Tenth Circuit recently considered the periodic administrative reviews provided to inmates in administrative segregation at the Colorado State Penitentiary, and found them

---

[3] Citing, *Connell v. Higginbotham*, 403 U.S. 207 (1971)*(public employment)*; *Wieman v. Updegraff*, 344 U.S. 183, 191-192 (1952); *Arnett v. Kennedy*, 416 U.S. 134, 164, 171 (1974). *Goldberg v. Kelly*, 397 U.S. 254 (1970) *(welfare entitlement)*; *Morrissey v. Brewer*, 408 U.S. 471 (1972)*(parole revocation)*; *Wolff v. McDonnell*, 418 U.S. 539 (1974)*(good time credits)*

constitutionally infirm because they failed to "provide a statement of reasons, which will often serve as a guide for future behavior (i.e., by giving the prisoner some idea of how he might progress toward a more favorable placement)" *Toevs v. Reid,* ____ F.3d ___ *6  (10th Cir. April 02, 2012) (WL 1085802).   Because the *Toevs* Court considered the requirements of due process in the "behavior modification program" context, its reasoning is particularly instructive here.

> . … a "meaningful" review for a prisoner in a behavior-modification program is one that evaluates the prisoner's current circumstances and future prospects, and, considering the reason(s) for his confinement to the program, determines whether that placement remains warranted. In the context of a stratified incentive program such as the QLLP, the review would consider whether the prisoner is eligible to move to the next level or, if the prisoner already is at the highest level, whether he or she is eligible to graduate from the program.
>
> …A complete failure to explain the prisoner's progress is like issuing a vague or ambiguous contempt order; one supposedly has the keys to one's release, but one has no idea what they are."

*Id.*   The putative purpose of the offense-specific treatment under the SOLSA is behavior modification and reduction in recidivism, precisely like that considered in *Toevs.*  Here, there is no guide to future behavior, nothing to give plaintiffs an idea of how they might progress toward placement in treatment, and no idea what the "keys" to their release look like.   Despite defendants' suggestion that the plaintiffs, once terminated, must "simply wait their turn", they offer no evidence of a "waitlist", *M. p. 17,*  no evidence of any process, guidelines, standards, or indications of how they might effectuate their placement on a "waitlist",  if one does exist, their return to treatment, or recapture any chance to make "meaningful progress".   The state has created a liberty interest in treatment; the defendants have

14

placed that interest in the middle of a road-less wilderness and refused the plaintiffs any directions, landmarks, guideposts, or means of access, in violation of their right to due process.

### C. DISPUTED: STATUTE OF LIMITATIONS

Defendants suggest that "claims" concerning termination from and refusal of re-entry into treatment are time-barred and should be dismissed. *M. pp. 14-15*. However, this is not a damages case. There are no "claims" for the defendants' wrongful conduct in 2002 or 2003, because the conduct is ongoing to the present and it is from the ongoing that the plaintiffs seek relief. As discussed at Section I, *supra*, the course of conduct, over time, is provided to contextualize the plaintiffs' claims, and to demonstrate the defendants' awareness of, and willful indifference to, the demonstrated consequences of their policies, decision, and conduct.

## V. DISPUTED: INTERFERENCE WITH THE RIGHT OF ACCESS TO COURTS AND RIGHT TO COUNSEL

### A. DISPUTED: RETALIATION FOR EXERCISE OF RIGHT TO ACCESS THE COURTS

The defendants assert that *Lewis v. Casey*, 518 U.S. 343, 346 (1996) controls what must be pled to state a claim for denial of access. Plaintiffs respectfully disagree. *Lewis* concerns the State's affirmative obligation to afford a prisoner access to legal materials so that s/he may bring a colorable claim for violation of a constitutionally-protected right, rather than its duty of non-interference. *Id.* at 355 (*interpreting Bounds as requiring prisons to provide inmates with the legal research facilities that they "need in order to attack their sentences, directly or*

15

*collaterally"*). *Lewis* does not address first amendment retaliation claims, the elements of which are well-settled in the Tenth Circuit, and the injury requirement for which is quite different.

A plaintiff makes a showing of unconstitutional retaliation for the exercise of his First Amendment rights by showing: 1) That s/he was engaged in constitutionally-protected activity; and 2) That the government's actions caused him injury which would chill a person of ordinary firmness from continuing to engage in that activity; and 3) That the government's actions were substantially motivated as a response to constitutionally protected conduct. *Klen v. City of Loveland,* 661 F.3d 498, 508 (10th Cir. 2011) (*citing Howards. v. McLaughlin, 634 F.3d 1131, 1144 (10th Cir. 2011)*). Here, the defendants threatened to remove plaintiffs from treatment and deny them readmission for any attempt to vindicate their rights in a legal proceeding, which the defendants term, "legalosity". *DKT#1 ¶¶36,55.* The prohibition against litigation is universally promulgated and affects every member of the class.

While "chilling" is the actual injury, sufficient to confer standing in an Article III Court, the defendants have also retaliated against the plaintiffs. *See, e.g., Muhammad v. Pitcher*, 35 F.3d 1081, 1083 (6th Cir. 1994) *(holding that "chilling effect" of lack of confidentiality of legal mail meets the "injury in fact" requirement of Article III as well as the requirements of an access to courts claim)*; *accord*, *Proudfoot v. Williams*, 803 F.Supp. 1048 (E.D.Pa. 1992). The fact that a particular plaintiff was sufficiently doughty to withstand threats and retaliation in a particular case does not change the analysis: if a person of ordinary, rather than extraordinary, firmness would have been dissuaded from continuing to seek adjudication, the injury is established. *See, e.g., Clarke v. Stalder*, 121 F.3d 222, 227-28 (5th Cir. 1997) *(holding that a prisoner in fear of*

*being punished under a rule prohibiting threatening staff with legal action had standing, citing City of Houston v. Hill, 482 U.S. 451, 459 n. 7 (1987)).*

The plaintiffs were actually chilled in bringing the instant claims, which are "arguably actionable" and non-frivolous. Fearing retaliation and believing that they needed all the protection which counsel might be able to provide before bringing the claims at issue, it was not until counsel were finally able to meet face-to-face with these plaintiffs that they were willing to expose themselves to the risk of retaliation. Many members of the class informed counsel that they were too frightened to be named as plaintiffs, and related instances of retaliation to support their claims that the risk was too great if they ever hoped to see parole.

### B.  DISPUTED: INTERFERENCE WITH THE RIGHT TO COUNSEL

Contrary to defendants' attempt to characterize their interference with counsels' attempts to visit clients in their facilities as "purported difficulties in having in-person meetings", defendants have continually and systematically obstructed counsel's attempts to consult with the plaintiffs, investigate, and plead their claims. *DKT#1 ¶54.* Also contrary to defendants' suggestion under  that they are entitled to truncate plaintiffs' and counsels' ability to meet and confer, the Tenth Circuit holds otherwise. In *Mann v. Reynolds,* 46 F.3d 1055, the Court makes clear that prison officials cannot erect arbitrary barriers to attorney-client visits. While acknowledging that "the Sixth Amendment does not require *in all instances* full and unfettered contact between an inmate and counsel" *Id.* at 1060 (emphasis added), the Court required that "***any*** burden" be reasonably related to penological objectives, rather than an "exaggerated response" to those concerns, *Id.* (emphasis in original) and found that there was no rational

explanation for the State's interference. The defendants offer no rational explanation for their conduct, and their suggestion that counsel should be content with telephonic and written communication is untoward and unworkable. By refusing counsel properly-scheduled visits repeatedly, at a time when contact with potential class representatives was essential to counsels' Rule 11 duty, the defendants interfered gravely with counsels' ability to bring the plaintiffs' claims, delaying filing for approximately one year, during which plaintiffs continued to be subject to the conduct at issue in this case. That delay, during which the plaintiffs have continued to live without the possibility of re-entering treatment, discovering how they might do so, or earning the opportunity for parole, constitutes actual injury to their constitutionally-protected rights.

## CONCLUSION

Wherefore, for the reasons set forth herein, plaintiffs respectfully request that the defendants' Motion to Dismiss the Complaint be denied.

Respectfully Submitted this 8th day of May, 2012,

| /s/ John Kenneth Pineau | s/ Ingrid J. DeFranco | /s/ Alison L. Ruttenberg |
|---|---|---|
| JOHN KENNETH PINEAU, P.C. | Law Office of Ingrid J. DeFranco | Alison L. Ruttenberg |
| John Kenneth Pineau | Ingrid J. DeFranco | P.O. Box 19857 |
| Grill Mansion | P.O. Box 128 | Boulder CO 80308 |
| 2305 Broadway | Brighton, CO 80601-0128 | (720) 317-3834 |
| Boulder, Colorado 80203 | (303) 443-1749 | Ruttenberg@me.com |
| (303) 440-4444 | fax: 303.558.4294 | |
| fax: (303) 449.2198 | ingrid.defranco@gmail.com | |
| johnpineau@yahoo.com | | |

CERTIFICATE OF SERVICE

I hereby certify that I have, this 8th day of May, 2012, served the foregoing upon all parties via electronic service through the PACER ECF system, with service to:

Nicole.Gellar@state.co.us          Kathryn.Starnella@state.co.us

/s/ Ingrid J. DeFranco