IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
**Judge Philip A. Brimmer**

Civil Action No. 11-cv-03396-PAB-MEH

PAUL ALLEN,
SCOTT ARENDS,
WAYNE BETHURUM,
JEREMY LOYD, and
GARY SKAGGS,
On behalf of themselves and all others similarly situated,

      Plaintiffs,

v.

TOM CLEMENTS, Executive Director, Colorado Department of Corrections,
BURL MCCULLAR, Director of the Sex Offender Treatment and Management Program,
Colorado Department of Corrections, and
JANE/JOHN DOE(S), known to defendants but presently unknown to plaintiffs,

      Defendants.

---

## ORDER

---

      This matter is before the Court on Defendants Clements and McCullar's Motion to Dismiss Class Action Complaint for Declaratory and Injunctive Relief [Docket No. 14]. The Court's jurisdiction is based on 28 U.S.C. § 1331. Plaintiffs are inmates in the Colorado Department of Corrections ("CDOC") who have been sentenced to indeterminate terms of imprisonment under the Colorado Sex Offender Lifetime Supervision Act ("SOLSA"), Colo. Rev. Stat. § 18-1.3-1001 *et seq.* Docket No. 1 at 2, ¶ 1. Plaintiffs claim that, under SOLSA, they can only be paroled if they complete sex offender treatment and, therefore, unless they have access to such treatment, they will serve life sentences contrary to legislative intent. Docket No. 1 at 3.

## I.  PROCEDURAL HISTORY

Plaintiffs filed this case, pursuant to 42 U.S.C. § 1983, on December 29, 2011, on behalf of themselves and all other persons who are, or will be, held in custody by CDOC pursuant to SOLSA.  Docket No. 1 at 6, ¶ 18.  Plaintiffs allege that defendants are arbitrarily denying them sex offender treatment in violation of the Eighth and Fourteenth Amendments.  Docket No. 1 at 13-15, ¶¶ 43-52.  They also allege that defendants have interfered with their access to counsel and to the courts, in violation of the First, Sixth, and Fourteenth Amendments.  Docket No. 1 at 15-16, ¶¶ 53-58.  Plaintiffs request that the Court (1) declare that defendants' conduct is unconstitutional; (2) enjoin defendants from arbitrarily and capriciously denying plaintiffs treatment or access to counsel; and (3) award plaintiffs reasonable attorney's fees and costs.  Docket No. 1 at 17, ¶¶ 3-5.  Defendants have filed a motion to dismiss plaintiffs' complaint for lack of subject matter jurisdiction and failure to state a claim upon which relief may be granted.  Docket No. 14.

## II.  STANDARD OF REVIEW

The Court's function on a Rule 12(b)(6) motion for failure to state a claim upon which relief can be granted is not to weigh potential evidence that the parties might present at trial, but to assess whether the plaintiff's complaint alone is legally sufficient to state a claim.[1]  FED. R. CIV. P. 12(b)(6); *Dubbs v. Head Start, Inc.*, 336 F.3d 1194,

---

[1] Although defendants assert they are moving for dismissal under Rule 12(b)(1), in addition to Rule 12(b)(6), they advance only one argument related to subject matter jurisdiction, which is that, to the extent plaintiffs seek retroactive declaratory relief, their claims are barred by the Eleventh Amendment.  Docket No. 14 at 4-5; *see White v. State of Colo*. 82 F.3d 364, 366 (10th Cir. 1996).  However, while the complaint could be read to seek declaratory relief as to past practices, plaintiffs disclaim any intent to do

1201 (10th Cir. 2003) (citations omitted).  In doing so, the Court "must accept all the well-pleaded allegations of the complaint as true and must construe them in the light most favorable to the plaintiff."  *Alvarado v. KOB-TV, LLC*, 493 F.3d 1210, 1215 (10th Cir. 2007) (quotation marks and citation omitted).  At the same time, however, a court need not accept conclusory allegations.  *Moffett v. Halliburton Energy Servs., Inc.*, 291 F.3d 1227, 1232 (10th Cir. 2002).

Generally, "[s]pecific facts are not necessary; the statement need only 'give the defendant fair notice of what the claim is and the grounds upon which it rests.'" *Erickson v. Pardus*, 551 U.S. 89, 93 (2007) (per curiam) (quoting *Bell Atlantic Corp. v. Twombly,* 550 U.S. 544, 555 (2007)).  The "plausibility" standard requires that relief must plausibly follow from the facts alleged, not that the facts themselves be plausible. *Bryson v. Gonzales*, 534 F.3d 1282, 1286 (10th Cir. 2008).  However, "where the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged—but it has not shown—that the pleader is entitled to relief."  *Ashcroft v. Iqbal*, 556 U.S. 662, 679 (2009) (internal quotation marks and alteration marks omitted).  Thus, even though modern rules of pleading are somewhat forgiving, "a complaint still must contain either direct or inferential allegations respecting all the material elements necessary to sustain a recovery under some viable legal theory."  *Bryson*, 534 F.3d at 1286 (quotation marks and citation omitted).

"[A] putative class representative who alleges no individual injury may not seek relief on behalf of himself or any other member of the class."  *U.S. Parole Comm'n v.*

---

so and do not seek relief intended to remedy past harm.  *See* Docket No. 23 at 4. Thus, defendants' jurisdictional argument is inapplicable.

*Geraghty*, 445 U.S. 388, 413 (1980) (quoting *O'Shea v. Littleton*, 414 U.S. 488, 494 (1974) (internal quotation marks omitted)).  Plaintiffs "must allege and show that they personally have been injured, not that injury has been suffered by other, unidentified members of the class to which they belong and which they purport to represent." *Warth v. Seldin*, 422 U.S. 490, 502 (1975).

"[I]n general, a motion to dismiss should be converted to a summary judgment motion if a party submits, and the district court considers, materials outside the pleadings." *Prager v. LaFaver*, 180 F.3d 1185, 1188 (10th Cir. 1999); Fed. R. Civ. P. 12(d).  However, a court may properly consider facts subject to judicial notice, state court pleadings, and matters of public record without converting a motion to dismiss into a motion for summary judgment. *Pace v. Swerdlow*, 519 F.3d 1067, 1072 (10th Cir. 2008).  State administrative regulations are subject to judicial notice. *Roemer v. Bd. of Pub. Works of Md.*, 426 U.S. 736, 743 n.4 (1976) (taking judicial notice of Maryland Board of Public Works regulations); *Ray v. Aztec Well Serv. Co.*, 748 F.2d 888, 889 (10th Cir. 1984) ("This court can take judicial notice of [state] agency rules and regulations."); *see also Burkhart v. Timme*, No. 11-cv-00341-MSK-MEH, 2013 WL 317544, at *3 n.2 (D. Colo. Jan. 25, 2013) ("the Court takes judicial notice of the fact that CDOC's Administrative Regulations are public records and a full copy of the regulations discussed in this Order [is] available online").

## III.  FACTUAL ALLEGATIONS IN COMPLAINT

The following facts are drawn from the complaint unless otherwise indicated and, for purposes of defendants' motion to dismiss, are assumed to be true.

Defendant Tom Clements is the Executive Director of CDOC.  Docket No. 1 at 5, ¶ 14.  Defendant Burl McCullar is the Director of the Sex Offender Treatment and Management Program ("SOTMP").  Docket No. 1 at 5, ¶ 15.  Defendants Clements and McCullar are responsible for policymaking with respect to SOTMP's provision of treatment.  Docket No. 1 at 5, ¶¶ 14-15.  The Doe defendants are individuals employed by CDOC who are responsible for conceiving and implementing CDOC's policies with respect to providing treatment under SOLSA.  Docket No. 1 at 5, ¶ 16.  Defendant CDOC is a prison system operating pursuant to Colo. Rev. Stat. § 17-1-101 *et seq*. Docket No. 1 at 5, ¶ 17.

SOLSA provides that "[e]ach sex offender sentenced pursuant to this section shall be required as a part of the sentence to undergo treatment to the extent appropriate."  Colo. Rev. Stat. § 18-1.3-1004(3).  Treatment is administered by the SOTMP.  CDOC Administrative Regulation 700-19, Sex Offender Treatment and Monitoring Program [Docket No. 15-1].[2]  Individuals sentenced under SOLSA are not eligible for parole unless they complete offense-specific treatment.  Colo. Rev. Stat. § 18-1.3-1006(1)(a) ("In determining whether to release the sex offender on parole, the parole board shall determine whether the offender has successfully progressed in treatment and would not pose an undue threat to the community").  Resources permitting, SOTMP provides two phases of treatment, Level I and Level II.  Docket No. 15-1 at 5, § IV.F.  In Level I, inmates focus on taking responsibility for their abusive behavior, identifying problem areas, and demonstrating their willingness to commit to

---

[2] The Court takes judicial notice of CDOC regulations.  *See Aztec Well Serv. Co.*, 748 F.2d at 889.

the requirements of the treatment program. *Id*. at 5, § IV.F.1.  In Level II, inmates prepare for "living a responsible lifestyle in the community" by changing distorted thought patterns, identifying relapse cycles and means for interrupting those cycles, and practicing problem-solving strategies. *Id*. at 5-6, § IV.F.2.

On November 8, 2001, plaintiff Paul Allen was sentenced under SOLSA to an indeterminate term of two-years-to-life for sexually assaulting a child.  Docket No. 1 at 8, ¶ 29.  His parole eligibility date was July 20, 2002.  *Id*.  He was not permitted to begin treatment until 2011 and, as of the filing of the complaint, he had not advanced to Level II treatment.  *Id*.

On March 15, 2002, plaintiff Scott Arends was sentenced under SOLSA to an indeterminate term of two-years-to-life for sexually assaulting a child.  Docket No. 1 at 8, ¶ 30.  His parole eligibility date was April 24, 2003.  *Id*.  He was permitted to begin treatment in April 2002, but was terminated in November 2002 on a false allegation and without a hearing.  *Id*.  He was permitted to begin treatment again in June 2003 and advanced to the second level of treatment in July 2003, at which point he was terminated for having too many Christian magazines.  *Id*.  In 2004, he was transferred to a different facility, where he was victimized for his sexual orientation and the nature of his conviction.  Docket No. 1 at 8-9, ¶ 30.  In 2005, he was returned to his initial facility and permitted to restart the second level of treatment.  *Id*.  He was terminated from treatment once again and permitted to restart in 2006.  *Id*.  He was then terminated for being a "danger to others" based on a contagious rash.  *Id*.  He was readmitted and then terminated again in July 2010 for withholding information from his

therapists.  Docket No. 15-2 at 1-2.  Since July 2010, he has not been able to re-enroll in treatment.  Docket No. 1 at 9, ¶ 30.

On June 7, 2001, plaintiff Wayne Bethurum was sentenced under SOLSA to an indeterminate term of six-years-to-life for sexually assaulting a child.  Docket No. 1 at 9, ¶ 31.  His parole eligibility date was December 7, 2005.  *Id*.  As of the filing of the complaint, he was not being provided treatment.  *Id*.

On May 9, 2003, plaintiff Jeremy Loyd was sentenced under SOLSA to an indeterminate term of two-years-to-life for sexually assaulting a child.  Docket No. 1 at 9, ¶ 32.  His parole eligibility date was May 18, 2004.  *Id*.  Mr. Loyd was not permitted to begin treatment until 2005.  *Id*.  After beginning treatment, he was sent to the hospital and, while there, he was terminated from treatment for not making sufficient progress.  *Id*.  He was not permitted to restart treatment for a period of eighteen months.  *Id*.  He is not permitted to have contact with children for any reason, including his three teenaged children.  *Id*.  In 2009, a cousin told him over the telephone that he had seen Mr. Loyd's children at a family reunion.  Docket No. 1 at 9-10, ¶ 32.  When Mr. Loyd disclosed this call to the treatment team, he was terminated for engaging in "third-party contact" with his children.  *Id*.  As of the filing of the complaint, he had not been permitted to restart treatment.  *Id*.

On November 13, 2001, plaintiff Gary Skaggs was sentenced under SOLSA to an indeterminate term of eight-years-to-life for sexually assaulting a child.  Docket No. 1 at 10, ¶ 33.  His parole eligibility date was February 21, 2007.  *Id*.  Mr. Skaggs completed the first level of treatment, but was terminated from the second level based

on the results of polygraph examinations.  *Id*.  He has been told that he will only be readmitted to treatment if he admits to committing other, unspecified crimes.  *Id*.  He has made twelve requests for readmission but has not obtained any additional information about it.  *Id*.  As of the filing of the complaint, he had not been permitted to restart treatment.  *Id*.

The regulations governing SOTMP provide guidance to SOTMP staff on assigning prisoners to, and removing them from, treatment.  CDOC Administrative Regulation ("AR") 700-19, Docket No. 15-1 at 4, § IV.E, provides that "offenders may be prioritized for treatment based upon, but not limited to, sentence type, parole eligibility date, appropriate institutional behavior and placement, and prior SOTMP treatment opportunities."  It further states that "[o]ffenders that have not had an opportunity to participate in treatment will have priority over an offender that has had an opportunity and did not take advantage of that opportunity."  Docket No. 15-1 at 4.  It also sets forth criteria for being placed on a waitlist for treatment.  Docket No. 15-1 at 5.

AR 700-32 details the procedure for terminating offenders from SOTMP.  *See* Docket No. 26 at 5; *available at* http://www.doc.state.co.us/administrative-regulations. It states that SOTMP therapists may recommend an offender for a termination review if the offender is not progressing satisfactorily in treatment or is exhibiting behaviors inconsistent with program expectations, creating a safety risk, or otherwise violating the agreed-upon terms of his treatment.  *Id*. at 2.  The regulation provides for advance written notice of termination; the right to a termination review hearing; the right to review non-confidential evidence prior to the hearing; the right to present evidence and

question witnesses at the hearing; the right to request assistance from CDOC

employees, but not from an attorney; and the right to a written determination, based on

a preponderance of the evidence, explaining the review panel's reasoning.  *Id*. at 2-5.

## IV. DISCUSSION

### A.  Eighth Amendment

#### 1.  *Cruel and Unusual Punishment*

The Eighth Amendment's prohibition on cruel and unusual punishment

encompasses not only "physically barbarous punishments" but also "punishments which

are incompatible with the evolving standards of decency" or "involve the unnecessary

and wanton infliction of pain."  *Estelle v. Gamble*, 429 U.S. 97, 102-03 (1976) (internal

citations omitted).  Conditions of confinement that "deprive inmates of the minimal

civilized measure of life's necessities" may be cruel and unusual.  *Rhodes v. Chapman*,

452 U.S. 337, 347 (1981).  An Eighth Amendment claim requires both a showing that

the challenged conditions are sufficiently and objectively severe and a showing that the

defendant prison officials were subjectively aware of "a substantial risk of serious harm

to an inmate" and yet voluntarily acted, or failed to act, despite that awareness.  *Farmer

v. Brennan*, 511 U.S. 825, 828, 842 (1994).  "[W]hile an inmate does not have a federal

constitutional right to rehabilitation, he is entitled to be confined in an environment

which does not result in his degeneration or which threatens his mental and physical

well-being."  *Battle v. Anderson*, 564 F.2d 388, 403 (10th Cir. 1977).

The Tenth Circuit has held that the "'core areas' of any Eighth Amendment claim

are shelter, sanitation, food, personal safety, medical care, and adequate clothing."[3]

*Clemmons v. Bohannon*, 956 F.2d 1523, 1527 (10th Cir. 1992). However, the Tenth

Circuit has also recognized circumstances in which the Eighth Amendment protects

prisoners from wanton and unnecessary psychological harm.[4] *Perkins v. Kan. Dep't of*

*Corr.*, 165 F.3d 803, 810-11 (10th Cir. 1999). For example, "disseminating humiliating

but penologically irrelevant details of a prisoner's medical history, or branding or

tatooing HIV-positive inmates . . . or making them wear a sign around their neck that

read 'I AM AN AIDS CARRIER!' may violate the Eighth Amendment." *Id*. (internal

citations omitted).

  In *Perkins*, the court considered an Eighth Amendment claim brought by an HIV-

positive prisoner forced by prison officials to wear a face mask, purportedly to prevent

him from spitting on other inmates or guards. *Id*. The plaintiff alleged that the face

mask did not serve a legitimate penological purpose but was instead unconstitutional

---

[3] As defendants point out, the Eighth Amendment also bars wrongful confinement. *See Mitchell v. N.M. Dep't of Corrs.*, 1993 WL 191810, at *3 (10th Cir. June 1, 1993) ("Imprisonment beyond one's term can constitute cruel and unusual punishment."); Docket No. 14 at 10. Plaintiffs allege that defendants are "condemning Plaintiffs to a life sentence never intended by the sentencing judge or the General Assembly." Docket No. 1 at 12, ¶ 38. However, they do not argue in their response that they are being confined beyond their lawful term, nor do they argue that serving a life sentence for committing sexual assault on a child would in and of itself be cruel and unusual. *See generally*, Docket No. 23; *see also Harmelin v. Michigan*, 501 U.S. 957, 965 (1991) ("the Eighth Amendment contains no proportionality guarantee").

[4] The Prison Litigation Reform Act bars prisoners from bringing suits under § 1983 for compensatory damages where no physical harm is alleged. *See* 42 U.S.C. § 1997e(e); *Searles v. Van Bebber*, 251 F.3d 869, 875-76 (10th Cir. 2011). However, it does not bar claims for declaratory or injunctive relief. *Perkins*, 165 F.3d 803, 808 (10th Cir. 1999) ("We agree with our sister circuits that § 1997e(e) does not affect actions for declaratory or injunctive relief.").

punishment for his HIV status, "meant to brand him as an HIV carrier and humiliate him whenever he [left] his cell." *Id*.  In addition to the face mask, the plaintiff alleged that prison officials had placed a sign on his door warning others that he was "extremely dangerous." *Id*.  Plaintiff alleged that the challenged practices subjected him to "constant humiliation," caused him "extreme mental anguish," and "hastened his death." *Id*.  The Tenth Circuit held that the lower court erred in dismissing plaintiff's claim without at least ordering defendants to prepare a report pursuant to *Martinez v. Aaron*, 570 F.2d 317 (10th Cir. 1978).  *Id.*

The Tenth Circuit has also held that labeling a prisoner a snitch and thereby exposing him to the risk of harm from fellow inmates may violate the Eighth Amendment, even when no physical harm has occurred.  *Benefield v. McDowall*, 241 F.3d 1267, 1272 (10th Cir. 2001).  "The actual extent of any physical injury, threats or psychological injury is pertinent in proving a substantial risk of serious harm."  *Id*.; *see also Escobar v. Mora*, No. 11-1422, 2012 WL 3893126, at *4 (10th Cir. Sept. 10, 2012) ("plaintiff's thirty-pound weight loss complemented his alleged mental distress, giving an objective physical dimension to his [psychological] injury").

Here, plaintiffs allege that, because they were told at sentencing that they would be eligible for parole after completing treatment, defendants' policies "permitting arbitrary, capricious, and pretextual termination of plaintiffs from treatment and refusal to promulgate any sort of roadmap to, or rational, objective, process for obtaining, re-entry is unnecessarily and wantonly cruel" and has "subject[ed] the plaintiffs to wanton and unnecessary cruelty, degradation, and physical illness and injury."  Docket No. 23

at 10.  These allegations do not meet the objective prong of the test.

First, plaintiffs do not allege a physical injury in their complaint.  Docket No. 1 at 12, ¶ 38.  Thus, plaintiffs' assertion in their response that defendants have subjected plaintiffs to "physical illness and injury," accompanied by citations to studies showing that anxiety can damage the brain, is outside the scope of the complaint and, in any event, is too vague to "giv[e] an objective physical dimension" to plaintiffs' alleged psychological injuries.  Docket No. 23 at 10; *see Escobar*, 2012 WL 3893126, at *3-4.

Second, it is difficult to determine the "actual extent of any . . . psychological injury" that plaintiffs allege they have suffered.  *See Benefield*, 241 F.3d at 1272.  Plaintiffs appear to allege that the uncertainty of not knowing when or if they will be released on parole, compounded by the expectation engendered at sentencing that they would be able to gain access to parole by completing the treatment program, have caused them psychological harm.  *See* Docket No. 23 at 9 ("[The plaintiffs] understand that they will face lifetime supervision, but are told by the sentencing judges that they will become parole-eligible after completing treatment.  The defendants have vitiated this understanding.").  Thus, plaintiffs' allegations regard the uncertain duration of their confinement and not the deprivation of a fundamental physical need, such as food or sleep.  *See Clemmons*, 956 F.2d at 1527.  Moreover, plaintiffs' injury is unlike that alleged in *Perkins*.  *See* 165 F.3d 803.  Plaintiffs do not allege that they are being publicly humiliated or visibly branded, as was Mr. Perkins.  *See* 165 F.3d at 811.  Plaintiffs' injury is also distinguishable from that in *Benefield* because plaintiffs do not allege that defendants' conduct has exposed them to the risk of imminent physical harm

or placed them in fear for their personal safety.  *See* 241 F.3d at 1272.  Nor do plaintiffs

explain how  the conditions of their confinement "result in [their] degeneration or . . .

threaten[] [their] mental and physical well-being."  *Battle v. Anderson*, 564 F.2d 388,

403 (10th Cir. 1977).

Accordingly, plaintiffs do not allege conditions so objectively severe that they rise

to the level of an Eighth Amendment violation.  *See Rhodes*, 452 U.S. at 347.

### B.  Due Process

Plaintiffs allege that the denial of treatment has deprived them of procedural and

substantive due process in violation of the Fourteenth Amendment.  Docket No. 1 at 13-

15, ¶¶ 46-52; U.S. Const. amend. XIV, § 1.  In order to determine whether a due

process violation has occurred, the Court must first address whether plaintiffs'

allegations establish that they have a protected liberty interest.  *Beebe v. Heil*, 333 F.

Supp. 2d 1011, 1016 (D. Colo. 2004).  If the Court finds that a liberty interest is at

stake, it must then determine whether plaintiffs' allegations establish (1) that defendants

do not provide sufficient process before depriving them of that interest or (2) that

defendants' conduct betrays deliberate indifference to plaintiffs' liberty in a manner

shocking to the judicial conscience.  *Id*.

#### 1.  Liberty Interest

Plaintiffs allege that defendants are depriving them of liberty without due process

of law by arbitrarily barring them from enrolling in, remaining in, and re-enrolling in

treatment.  Docket No. 1 at 13-15, ¶¶ 46-52.

"[S]tate statutes may create liberty interests that are entitled to the procedural

protections of the Due Process Clause of the Fourteenth Amendment." *Montero v. Meyer*, 13 F.3d 1444, 1447 (10th Cir. 1994) (quoting *Vitek v. Jones*, 445 U.S. 480, 488 (1980)).  A state-created liberty interest arises from "a legitimate claim of entitlement" and not from an "abstract need or desire" or from "a unilateral expectation." *Bd. of Regents of State Colleges v. Roth*, 408 U.S. 564, 577 (1972).  In the prison context, the due process clause safeguards "only a narrow range of protected liberty interests." *Rezaq v. Nalley*, 677 F.3d 1001, 1011 (10th Cir. 2012) (internal citations omitted).  A prisoner has a protected liberty interest in avoiding harsh conditions of confinement to the extent that they "impose[] atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life," as well as in avoiding disciplinary actions that "inevitably affect the duration of his sentence." *Sandin v. Connor*, 515 U.S. 472, 484, 487 (1995).  With respect to the cessation of state-mandated sex offender treatment, the due process clause protects against "a major change in the conditions of confinement" amounting to a grievous loss.  *Beebe v. Stommel*, No. 02-cv-01993-WYD-BNB, Findings of Fact and Conclusions of Law [Docket No. 163], at 17, ¶ 12 (D. Colo. Nov. 13, 2006) (quoting *Wolff v. McDonnell*, 418 U.S. 539, 572 n.19 (1974)); *see also Morrissey v. Brewer*, 408 U.S. 471, 481 (1972) ("Whether any procedural protections are due depends on the extent to which an individual will be 'condemned to suffer grievous loss.') (internal citations omitted)).

SOLSA creates a liberty interest in treatment because it both mandates treatment and conditions parole on progressing successfully through treatment.  *Beebe v. Heil*, 333 F. Supp. 2d 1011; *see* Colo. Rev. Stat. §§ 18-1.3-1004(3), 16-11.7-105.

Furthermore, "unreasonably refusing" to re-enroll an inmate who was terminated from treatment without due process could implicate a protected liberty interest. *Beebe v. Stommel*, No. 02-cv-01993-WYD-BNB, at 30-31, ¶ 44.

However, the right to treatment is not absolute or unconditional. The court in *Beebe v. Stommel* held that it was constitutional for CDOC to condition receipt of treatment on an "inmate's willingness and ability to comply with the rules and regulations governing treatment" and that courts must defer to CDOC "to determine what rules and regulations are necessary to ensure successful treatment that meets institutional concerns." *Id.* at 34-35, ¶¶ 53-54 (citing *Turner v. Safley*, 482 U.S. 78, 89 (1987) ("prison administrators . . . , and not the courts, [are] to make the difficult judgments concerning institutional operations")). The court further stated that plaintiff had failed to show that the conditions imposed by CDOC were "not reasonably related to legitimate penological objectives" or that they were "an exaggerated response" to institutional concerns. *Id.* at 35, ¶ 54. Moreover, as a result of the decision in *Beebe*, CDOC has issued regulations addressing these issues. *See* AR 700-32.

Likewise, in *Firth v. Shoemaker*, 2012 WL 3871660, at *8 (10th Cir. Sept. 7, 2012), the Tenth Circuit did not dispute that the plaintiff had a liberty interest "in the ability to participate in mandatory SOTMP treatment," but held that he did not have an interest in completing treatment before the end of his minimum sentence. *See also Firth v. Shoemaker*, No. 09-cv-00224-MSK-MJW, 2010 WL 882505, at *7 (D. Colo. Mar. 8, 2010) ("CDOC is vested with discretion as to how to allocate limited resources to the SOTMP program and, correspondingly, inmates have no liberty interest in unfettered

access to that program"), *aff'd*, 2012 WL 3871660 (10th Cir. Sept. 7, 2012).

The Tenth Circuit has identified several "key factors" that courts should consider in identifying a liberty interest.  *See Rezaq*, 677 F.3d at 1011; *DiMarco v. Wyo. Dep't of Corrs.*, 473 F.3d 1334, 1342 (10th Cir. 2007).  While these cases focus on the conditions of confinement rather than an inmate's eligibility for parole, the Court finds they nonetheless offer relevant considerations for evaluating the nature of the liberty interest that plaintiffs allege is at stake in this case.  The Tenth Circuit has cautioned, however, that these factors are guideposts and not a "constitutional touchstone," stressing that this must remain a "fact-driven assessment that accounts for the totality of conditions presented by a given inmate's sentence and confinement."  *Rezaq*, 677 F.3d at 1012.  The key factors that a court should consider include whether the challenged conditions are (1) in furtherance of a legitimate penological interest; (2) extreme; (3) certain to increase the duration of confinement; and (4) of indeterminate duration.  *DiMarco*, 473 F.3d at 1342.  These factors, as well as the cases discussed above, will be considered in analyzing whether plaintiff has a liberty interest in enrolling in, remaining in, or re-enrolling in treatment.

### a. Enrollment

Plaintiffs assert a liberty interest in initial enrollment in treatment.  *See* Docket No. 23 at 14 ("there is no guide to future behavior, nothing to give plaintiffs an idea of how they might progress toward placement in treatment").  Defendants argue that plaintiffs seem to be claiming a liberty interest in completing sex offender treatment within the space of their minimum sentences and point out that the Tenth Circuit has

already rejected this claim.  Docket No. 14 at 15; *see Firth*, 2012 WL 3871660, at *9.

Defendants read the complaint too narrowly.  It alleges more generally that defendants

have arbitrarily and capriciously denied plaintiffs' access to treatment.  Docket No. 1 at

14, ¶ 48.  However, plaintiffs do not allege that any of the named plaintiffs are currently

waiting to enroll in treatment for the first time.  *See generally*, Docket No. 1 at 8-10,

¶¶ 29-33.  Thus, the complaint does not establish that the named plaintiffs have a

liberty interest in initial enrollment.

### b.  Termination

Inmates sentenced under SOLSA have a liberty interest in not being terminated

from treatment without due process.  *Beebe*, 333 F. Supp. 2d at 1017.  Here, plaintiffs

do not allege specific procedural defects in the course of their termination, such as lack

of notice or a hearing,[5] but instead allege that they were terminated for arbitrary

reasons.  *See* Docket No. 1 at 8-10, ¶¶ 29-33.

"The touchstone of due process is protection of the individual against arbitrary

action of government."  *Wolff*, 418 U.S. at 558 (internal citation omitted).  Prison officials

may not "exercise[] their discretionary powers in such a manner as to constitute clear

abuse or caprice."  *Marchesani v. McCune*, 531 F.2d 459, 462 (10th Cir. 1976); *see

also Graham v. Willingham*, 384 F.2d 367, 368 (10th Cir. 1967) ("The basic

---

[5] Only Mr. Arends alleges that he was terminated without a hearing, Docket No. 1 at 8, ¶ 30.  However, he alleges that this termination occurred in November 2002 and that, since then, he has been enrolled in and terminated from treatment several times. Docket No. 1 at 8-9, ¶ 30.  Given his subsequent re-enrollment and termination from treatment, Mr. Arends cannot argue that the termination in 2002 is the cause of his current alleged denial of treatment, nor can he seek retroactive relief in the form of a declaratory judgment or damages.  Thus, any claim arising from that earlier termination is irrelevant or beyond the jurisdiction of the Court.

responsibility for the control and management of penal institutions, including the discipline, treatment and care of those confined, lies with the Attorney General and is not subject to judicial review unless exercised in such a manner as to constitute clear arbitrariness or caprice upon the part of prison officials."). Accordingly, "revocation of good time [credits] does not comport with [due process] unless the findings of the prison disciplinary board are supported by some evidence in the record." *Superintendent, Mass. Corr. Inst. at Walpole v. Hill*, 472 U.S. 445, 454 (1985). Likewise, a disciplinary hearing in which the factfinders have a "hidden motive" for finding an inmate guilty could deprive the inmate of a meaningful opportunity to be heard. *See Smith v. Maschner*, 899 F.2d 940, 947 (10th Cir. 1990).

Plaintiffs allege that defendants have terminated them from treatment on "pretextual grounds." Docket No. 1 at 11, ¶ 36. Specifically, they allege that Mr. Arends was terminated from treatment most recently because he had a rash that was perceived as posing a danger to others. Docket No. 1 at 9, ¶ 30. They further allege that Mr. Loyd was terminated because he reported a telephone call in which his cousin mentioned seeing Mr. Loyd's children. Docket No. 1 at 10, ¶ 32. Plaintiffs allege that Mr. Skaggs was terminated because of polygraph examinations. Docket No. 1 at 10, ¶ 33. Treating the allegations as true, the reasons for termination of Mr. Arends and Mr. Loyd are not reasonably related to the goals of treatment and do not otherwise accord with a legitimate penological purpose, *see Turner*, 482 U.S. at 89, and are sufficient to implicate a protected liberty interest. *See Marchesani*, 531 F.2d at 462.

The allegation that Mr. Skaggs was terminated because of polygraph examinations is not sufficient to establish a due process violation. The SOTMP utilizes

18

polygraphs to determine deceptiveness regarding deviant sexual history and to inform individualized treatment plans.  *See* Docket No. 15-1 at 6.  The use of polygraphs for this purpose is reasonably related to the goals of treatment and has a legitimate penological purpose.

### c. Re-enrollment

Plaintiffs allege that they have a liberty interest in re-enrolling in treatment after being terminated and that defendants have "unjustifiably, arbitrarily, capriciously, and pretextually denied . . . Plaintiffs from treatment."  Docket No. 1 at 8-10, 14 ¶¶ 29-33, 48.  It appears that plaintiffs are asserting a liberty interest in not being arbitrarily or indefinitely excluded from treatment with no procedure for contesting that exclusion. Defendants assert that "there is no additional procedural due process right attached to subsequent re-entry into treatment" but they do not provide any support for this assertion.  Docket No. 14 at 18.

The Court looks first to the specific factual allegations in the complaint to determine whether any of the named plaintiffs establishes that he has a liberty interest in re-enrolling in treatment.  Plaintiffs allege that, as of the filing of the complaint in December 2011, Mr. Arends had not been given the opportunity to re-enroll since his treatment was terminated in July 2010.  Docket No. 1 at 9, ¶ 30; *see* Docket No. 15-2 at 1.  Plaintiffs allege that Mr. Loyd has been unable to re-enroll since his treatment was terminated in the spring of 2009.  Docket No. 1 at 10, ¶ 33.  They allege that Mr. Skaggs has been unable to re-enroll in treatment for an unspecified amount of time, despite making repeated requests, and has not been provided with any information

regarding when he will be eligible for treatment.  Plaintiffs do not allege that Mr.

Bethurum and Mr. Allen have been terminated from treatment or are seeking re-

enrollment.[6]  Docket No. 1 at 8-9, ¶¶ 29, 31.

Turning to the *DiMarco* factors, the Court first considers whether defendants'

alleged refusal to re-enroll plaintiffs in treatment serves a legitimate penological

purpose.  *See DiMarco*, 473 F.3d at 1342.  Plaintiffs allege that the refusal to re-enroll

them in treatment is unjustified, arbitrary, capricious, and pretextual.  Docket No. 1 at

14, ¶ 48.  Taking plaintiffs' allegations as true, this factor weighs in their favor as it is

unclear what penological purpose would be served by a groundless denial of treatment.

The second factor, however, weighs against plaintiffs' claims.  Plaintiffs allege

that, following his fourth termination from treatment, Mr. Arends was unable to re-enroll

for a year and a half.  Docket No. 1 at 8-9, ¶ 30.  They allege that, following Mr. Loyd's

second termination from treatment, he was also unable to re-enroll for approximately

one and a half years.  Docket No. 1 at 9-10, ¶ 32.  They do not specify how long Mr.

Skaggs has been seeking to re-enroll in treatment.  Docket No. 1 at 10, ¶ 33.  The

Court finds that these allegations do not describe conditions of sufficient severity to

implicate a protected liberty interest.  *See DiMarco*, 473 F.3d at 1343.  Stated

otherwise, plaintiffs' complaint does not establish that plaintiffs have suffered a

"grievous loss."  *See Beebe v. Heil*, 333 F. Supp. 2d at 1016-17.

---

[6] With respect to Mr. Bethurum, plaintiffs state only that "Mr. Bethurum is not
being provided treatment."  Docket No. 1 at 9, ¶ 31.  This allegation is inadequate as it
does not state whether he has been enrolled in treatment in the past, what efforts he
has made towards enrolling in treatment, what information he has been given regarding
his eligibility for treatment, or any other facts that would permit the Court to evaluate
whether his claim implicates a protected liberty interest.

Third, it is possible that the allegedly arbitrary delay in re-enrolling plaintiffs in treatment extended the length of their sentences since they have all passed their initial parole eligibility date but are unable to obtain parole without progressing in treatment. *See DiMarco*, 473 F.3d at 1343.   However, plaintiffs' allegations are insufficient to render plausible this speculative conclusion.   *See Iqbal*, 556 U.S. at 680.   Plaintiffs do not state whether they satisfy other conditions for parole nor do they make any allegations regarding the outcome of their parole hearings.   As it is not possible to determine from plaintiffs' allegations whether their inability to re-enroll in treatment over the past two years has extended the duration of their sentences, plaintiffs' factual assertions do not "nudge" their claims "across the line from conceivable to plausible." *Id*. (internal citations omitted).

Finally, plaintiffs allege that the current deprivation of treatment will continue indefinitely, arguing that defendants have placed their liberty interest in treatment "in the middle of a road-less wilderness and refused the plaintiffs any directions, landmarks, guideposts, or means of access."   Docket No. 23 at 15.   For example, they allege that Mr. Skaggs

> has made more than twelve requests to be re-enrolled in Level II Treatment, or to be told what he must do to become eligible.   One request was answered with a response that he must admit other, unspecified crimes.   He has been given no further information and no means of becoming eligible for treatment or challenging the failure to re-enroll him.

Docket No. 1 at 10, ¶ 33.

Defendants claim that plaintiffs' allegations that they are without "directions, landmarks, [or] guideposts," Docket No. 26 at 6-7, is contradicted by AR 700-19, which states that "offenders may be prioritized for treatment based upon, but not limited to,

21

sentence type, parole eligibility date, appropriate institutional behavior and placement, and prior SOTMP treatment opportunities." Docket No. 15-1 at 4, § IV.E.1. It further states that, to be qualified for the treatment waitlist, an offender must (1) be eight years or less from his parole eligibility date; (2) admit to sexually abusive behavior and be willing to discuss the details; (3) be willing to admit to problems related to such behavior; (4) demonstrate a willingness to participate in group treatment; and (5) sign and comply with a SOTMP treatment contract. Docket No. 15-1 at 5, § IV.E.2. It explains that an offender who is terminated from treatment can reapply at any time and will be asked to complete an assignment addressing the reasons for his termination. Docket No. 15-1 at 7, § IV.I.5. Moreover, prisoners may obtain state court review of quasi-judicial decisions rendered by prison officials, including the decision to terminate an inmate from sex offender treatment, pursuant to Colorado Rules of Civil Procedure 106(a)(4) and 106.5. *See also* AR 700-32 at 5, § IV.E (providing for preservation of the record of termination review hearings). In light of CDOC's regulations, which list conditions for placement on a treatment waitlist, as well as the state law provisions authorizing judicial review of termination decisions, plaintiffs' vague allegations of an indefinite denial of treatment are not plausible. *See* Docket No. 15-1; COLO. R. CIV. P. 106(a)(4), 106.5.

Taking into account all the facts, including the length of the alleged deprivation of treatment, the absence of allegations demonstrating that this deprivation extended plaintiffs' sentences, the existence of procedures providing for a treatment waitlist and for state judicial review of CDOC termination decisions, and the fact that plaintiffs allege that Mr. Arends and Mr. Loyd have already been able to re-enroll in treatment multiple

times, plaintiffs' complaint does not implicate a protected liberty interest regarding re-enrollment in treatment.

### 2. Procedural Due Process

Plaintiffs allege that they were arbitrarily terminated from treatment in violation of their right to procedural due process.  Docket No. 1 at 14, ¶¶ 48-49.  In determining what level of process is due, courts take three factors into account:

> (1) the private interest that will be affected by the official action; (2) the risk of an erroneous deprivation of such interest through the procedures used, and the probable value, if any, of additional or substitute procedural safeguards; and (3) the Government's interest, including the function involved and the fiscal and administrative burdens that the additional or substitute procedural requirement would entail.

*McMillan v. Wiley*, 813 F. Supp. 2d 1238, 1249 (D. Colo. 2011) (citing *Mathews v. Eldridge*, 424 U.S. 319, 335 (1976)).  Notice and an opportunity to respond "are among the most important procedural mechanisms for purposes of avoiding erroneous deprivations."  *Wilkinson v. Austin*, 545 U.S. 209, 226 (2005).  Where "the inquiry draws more on the experience of prison administrators, and where the State's interest implicates the safety of other inmates and personnel," informal procedures are sufficient.  *Id*. at 228-29.

Plaintiffs do not make any allegations regarding the processes that defendants followed prior to terminating them from treatment.[7]  *See generally*, Docket No. 1 at 8-10.  However, the Court has taken judicial notice of AR 700-32, which provides that, prior to termination from treatment, inmates must receive (1) written notice listing the reasons that SOTMP staff are recommending termination; (2) an opportunity to request

---

[7] As discussed above, the sole exception is Mr. Arends.  Docket No. 1 at 8, ¶ 30.

a hearing before a panel of three SOTMP therapists; (3) the right to testify, present documentary evidence, call and question witnesses, and receive assistance from a DOC employee at the hearing; (4) a decision agreed to by a majority of the panel and based on a preponderance of the evidence; and (5) a written opinion explaining the panel's reasoning and the facts it relied on.

The procedures described in AR 700-32 comport with the requirements of the due process clause as they provide for detailed notice and a meaningful opportunity to be heard.  *See Wilkinson*, 545 U.S. at 226.  Given that providing treatment to offenders "draws more on the experience of prison administrators" and could "implicate[] the safety of other inmates and personnel," informal procedures would suffice.  *Id*. at 228-29.  Since plaintiffs do not allege that the established procedures are deficient, or that defendants materially deviated from these procedures in the course of terminating them from treatment, they cannot satisfy the second prong of a procedural due process claim based on termination from treatment.

### 3. *Substantive Due Process*

Plaintiffs argue that defendants deprived them of substantive due process by arbitrarily terminating them from treatment.  Docket No. 23 at 11-12.

The Fourteenth Amendment contains a substantive guarantee that protects against conduct by state and local officials that "shocks the conscience" or "afford[s] brutality the cloak of law."  *Whitley v. Albers*, 475 U.S. 312, 327 (1986).  In the prison context, substantive due process rights "are essentially coextensive with Eighth Amendment prohibitions against cruel and unusual punishment."  *Lunsford v. Bennett*,

17 F.3d 1574, 1583 (7th Cir. 1994).  In evaluating substantive due process claims, courts must be mindful of "(1) the need for restraint in defining their scope; (2) the concern that § 1983 not replace state tort law; and (3) the need for deference to local policymaking bodies in making decisions impacting upon public safety." *Graves v. Thomas*, 450 F.3d 1215, 1220-21 (10th Cir. 2006) (internal citations omitted).

Plaintiffs argue that "defendants deliberately ensured that their decisions [to terminate plaintiffs from treatment], and the bases for those decision [sic], would be insulated from review within the Department of Corrections."  Docket No. 23 at 12.  This argument is not supported by the allegations in the complaint.  The complaint states only that defendants terminated plaintiffs from treatment for arbitrary reasons.  It does not indicate whether plaintiffs exercised their right to a hearing, whether they presented evidence to refute the charges against them at such a hearing, or whether they otherwise brought their allegedly arbitrary terminations to defendants' attention. Furthermore, the complaint does not allege that defendants failed to comply with the prescribed procedures in terminating plaintiffs from treatment.  Accordingly, plaintiffs' allegations do not establish that defendants' conduct "shocked the conscience" or "violate[d] the decencies of civilized conduct." *County of Sacramento v. Lewis*, 523 U.S. 833, 846 (1998) (internal citations omitted).  Moreover, the Court's finding that plaintiffs do not state an Eighth Amendment claim weighs heavily against their substantive due process claim. *See Whitley v. Albers*, 475 U.S. at 327.

In sum, plaintiffs do not state a claim for violation of their right to substantive due process.

## C.  Right of Access to the Courts and Right to Assistance of Counsel

Plaintiffs allege that defendants violated their rights under the First, Sixth, and Fourteenth Amendments by interfering with their right of access to counsel and to the courts.  Docket No. 1 at 15-16, ¶¶ 53-58.  Defendants counter that these allegations are too vague and conclusory to state a claim.  Docket No. 14 at 21-26.

It is "established beyond doubt that prisoners have a constitutional right of access to the courts," which extends to prisoners asserting civil rights claims under 42 U.S.C. § 1983.  *Bounds v. Smith*, 430 U.S. 817, 821, 827 (1977).  The right of access is jointly protected by the petition clause of the First Amendment, *City of New York v. Beretta U.S.A. Corp.*, 524 F.3d 384, 397 (2d Cir. 2008); the Sixth Amendment, *Arney v. Simmons*, 26 F. Supp. 2d 1288 (D. Kan. 1998); and the privileges and immunities and due process clauses of the Fourteenth Amendment.  *Smith v. Maschner*, 899 F.2d 940, 947 (10th Cir. 1990).  This right "is violated where government officials obstruct legitimate efforts to seek judicial redress."  *Beretta*, 524 F.3d at 397 (citing *Whalen v. Cnty. of Fulton*, 126 F.3d 400, 406-07 (2d Cir. 1997) (internal citations omitted)).  The First Amendment also bars "[a]ny form of official retaliation for exercising one's freedom of speech, including prosecution, threatened prosecution, bad faith investigation, and legal harassment."   *Worrell v. Henry*, 219 F.3d 1197, 1212 (10th Cir. 2000)).

Federal Rule of Civil Procedure 8(a) states that a complaint shall contain a "short and plain statement of the claim showing that the pleader is entitled to relief."  This pleading requirement is intended to "give the defendant fair notice of what the plaintiff's claim is and the grounds upon which it rests."  *Leatherman v. Tarrant Cnty. Narcotics*

*Intelligence & Coordination Unit*, 507 U.S. 163, 168 (1993) (internal quotation marks and citation omitted).  Courts do not "require heightened fact pleading of specifics" in order to survive a motion to dismiss under Rule 12(b)(6), "but only enough facts to state a claim to relief that is plausible on its face."  *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007).  However, "[t]o state a constitutional claim, plaintiff must do more than simply state a conclusion or engage in 'artful pleading.'"  *Blinder, Robinson & Co., Inc. v. U.S. S.E.C.*, 748 F.2d 1415, 1419 (10th Cir. 1984) (internal citations omitted). Rather, "the complaint must give the court reason to believe that *this* plaintiff has a reasonable likelihood of mustering factual support for *these* claims."  *Ridge at Red Hawk, L.L.C. v. Schneider*, 493 F.3d 1174, 1177 (10th Cir. 2007).

In their complaint, plaintiffs make the following allegations regarding denial of access to the courts and impermissible retaliation:

> 36.  Defendants have . . . repeatedly threatened Plaintiffs with termination from treatment upon any exercise of their legal right to seek redress, have consistently interfered with and obstructed counsel's attempts to communicate with Plaintiffs, and have created a principle they term "Legalosity", which is defined as any attempt to educate themselves concerning, discuss, or exercise constitutional or legal rights, to support termination from treatment and refusal to permit re-enrollment.

> 54.  Defendants have systematically interfered with and obstructed Plaintiffs' rights to consult with counsel, by claiming that counsel failed to make appointments for visitation, by refusing to acknowledge requests transmitted by counsel, in exact compliance with the Department of Corrections' requirements, by claiming not to have received such requests, by repeatedly informing counsel that visitation rooms would not be made available during the times set aside for attorney visitation, by claiming to be insufficiently staffed to accommodate attorney visits, by claiming that facility wardens required use of the space set aside for attorney visits for periods of weeks, and, in 1 case, more than 1 month, and by limiting the time span in which attorneys are permitted to make any visit, in violation of the Department's published visitation policies.

55.  Defendants have further interfered with Plaintiffs' access to the courts by creating a system-wide concept which Defendants call, "Legalosity", and by which Defendants mean any attempt by Plaintiffs and those similarly situated to inform themselves concerning their legal and constitutional rights, or to take any action to secure, defend, or exercise those rights.  Any "finding" by Defendants that a Plaintiff or class member is engaging in "Legalosity" is grounds for termination from treatment, and has been used repeatedly and regularly against Plaintiffs and other class members to threaten and retaliate against them for any attempt to exercise their right of access to the courts.

Docket No. 1 at 11-12, 15-16, ¶¶ 36, 54-55.  Plaintiffs do not allege when or how frequently these incidents occurred, which defendants were involved and how, or any other relevant facts.  Of greatest detriment to their claims is the lack of allegations specifying which, if any, of the named plaintiffs were subject to which alleged practices. For example, plaintiffs do not allege that any of the named plaintiffs have been accused of or adversely affected by a finding they engaged in "Legalosity."  *See* Docket No. 1 at 8-10, 15-16, ¶¶ 29-33, 55.  Absent an allegation of individual injury, the named plaintiffs "may not seek relief on behalf of [themselves] or any other member of the class." *Geraghty*, 445 U.S. at 413.  Moreover, plaintiffs' allegations fail to link specific defendants with specific actions, failing to "give the defendant[s] fair notice of what the [plaintiffs'] claim is and the grounds upon which it rests."  *Leatherman*, 507 U.S. at 168.

Plaintiffs' conclusory statements regarding general conduct that unidentified defendants perpetrated against unidentified plaintiffs at unidentified times and places do not meet the requirements of Rule 8(a).  *See Ridge at Red Hawk*, 493 F.3d at 1177.

## V.  CONCLUSION

For the foregoing reasons, it is

**ORDERED** that Defendants Clements and McCullar's Motion to Dismiss Class

28

Action Complaint for Declaratory and Injunctive Relief [Docket No. 14] is GRANTED.  It

is further

> **ORDERED** that plaintiffs' claims are DISMISSED.  It is further

> **ORDERED** that all other pending motions are DENIED as moot.


DATED March 13, 2013.

BY THE COURT:


 s/Philip A. Brimmer
PHILIP A. BRIMMER
United States District Judge